IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**BETH C.,**

    **Plaintiff,**

vs.                                                             **CIVIL ACTION NO. 3:25-CV-00184**

**FRANK BISIGNANO,**
*Commissioner Of Social Security*,

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, respectively. By Order entered March 24, 2025 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision. (ECF Nos. 7, 8)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 7), **DENY** the Commissioner's request to affirm the decision of the

Commissioner (ECF No. 8); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her applications for DIB and SSI on October 29, 2021 alleging disability beginning January 16, 2019 due to "severe major depression, chronic fatigue, PCOS, class 3 severe obesity, major depressive disorder, severe with psychotic feature, carrier of hemochromatosis HFE gene mutation, secondary amenorrhea, generalized anxiety disorder, bipolar 1 disorder, depression, and vitamin D deficiency" (Tr. at 84, 641).[1] Her claims were denied initially on January 28, 2022 and upon reconsideration on June 1, 2022. (Tr. at 84, 388-392, 393-397, 400-402, 403-407) Thereafter, the Plaintiff filed a written request for hearing on July 22, 2022. (Tr. at 84, 418-419)

An administrative hearing was held on September 28, 2023 before the Honorable Christina Hajjar, Administrative Law Judge ("ALJ") (Tr. at 309-333). On February 1, 2024, the ALJ entered an unfavorable decision (Tr. at 81-107). On January 29, 2025, the Appeals Council denied the Plaintiff's Request for Review, thus, the ALJ's decision became the final decision of the Acting Commissioner (Tr. at 1-7).

On March 21, 2025, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed a Brief

---

[1] The Plaintiff also alleged she stopped working June 15, 2021 due to her conditions and "other reasons", including having "had several major anxiety attacks while [] at work." (Tr. at 634-635)

in support of her complaint (ECF No. 7); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), to which the Plaintiff filed her Reply Brief (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 21 years old as of the alleged onset date, and therefore considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 98) She has at least a high school education (Id.), and last worked as a retail clerk on June 15, 2021. (Tr. at 329, 636)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d).

If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

>    (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>    (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
>    (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings

and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements ("DLI") through September 30, 2020. (Tr. at 86, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of January 16, 2019. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: epilepsy; obesity; lumbago with sciatica; a learning disorder; anxiety disorder; depressive and bipolar disorder; and sleep apnea. (Tr. at 87, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 88, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except the Plaintiff

> can never climb ladders ropes and scaffolds and she must avoid all exposure to hazards (commercial driving, heights and moving machinery). The claimant can perform simple work in a non-fast paced work environment, with no strict time or production quotas. She can occasionally interact with others with no tandem tasks. She can tolerate occasional changes to the work environment.

(Tr. at 91, Finding No. 5)

At step four, the ALJ found the Plaintiff was not capable of performing her past relevant work. (Tr. at 97, Finding No. 6) However, based on the Plaintiff's age, education, work experience and RFC and the immateriality of the transferability of her job skills, the ALJ determined there are jobs that exist in the national economy the Plaintiff can perform. (Tr. at 98, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability since January 16, 2019 through the date of the decision. (Tr. at 99, Finding No. 11)

**Plaintiff's Challenges to Commissioner's Decision**

The Plaintiff argues that that despite finding the State agency psychological consultants' opinions persuasive, the ALJ did not include their assessments that the Plaintiff was restricted to "superficial" interactions with the public, co-workers, and supervisors in the RFC, or at least explain why this limitation was excluded from the RFC; thus, meaningful judicial review is frustrated, warranting remand. (ECF No. 7)[2]

In response, the Commissioner contends that the ALJ reasonably explained how she arrived at her determination of the Plaintiff's moderate limitations in mental functioning based on the medical and other evidence of record, and incorporated those findings in the RFC assessment; moreover, the ALJ was under no obligation to adopt all restrictions in the RFC determination. ECF No. 8) However, in this case, the ALJ considered in detail the "superficial" contact with others

---

[2] The Plaintiff compares the case at bar with a prior matter that came before this Court: *Dwayne C. v. Kijakazi*, No. 2:22-cv-00401, 2023 WL 4572064 (May 12, 2023), *report and recommendation adopted*, 2023 WL 4566064 (Jul. 17, 2023). In addition, the Plaintiff asserts the case at bar is analogous to another matter decided within this Circuit: Bostic v. Comm'r of Soc. Sec., 2024 WL 551478 (W.D.N.C. Feb. 12, 2024).

limitation, which distinguishes this case from the other cases cited by the Plaintiff. (Id.) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id.)

In her reply brief, the Plaintiff reiterates her arguments that the ALJ failed to account for the mental limitations in the RFC without any further explanation as to why they were omitted. (ECF No. 9)

**Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

<u>Prior Administrative Medical Findings and Opinion Evidence:</u>

At both the initial and reconsideration levels of review, the ALJ noted that the State agency psychological consultants opined that the Plaintiff retains the ability to complete simple and routine tasks in a predictable work environment where pace is not a factor and there are no strict time or production quotas. (Tr. at 95-96, 335-346, 348-359, 360-372, 374-386) Of importance here, the ALJ observed that the consultants further opined that the Plaintiff "retains the ability to interact with others (general public, coworkers, supervisors) occasionally and superficially." (Id.) The ALJ deemed both opinions persuasive, finding them consistent with the Plaintiff's mental

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the matter on appeal as referenced by the parties in their respective pleadings – as noted *supra*, the sole issue concerns the omission of the Plaintiff's restriction to "superficial" contact from the mental portion of the RFC determination. Accordingly, because there is no dispute concerning the medical evidence of record as it pertains to the Plaintiff's mental impairments, the undersigned declines to reproduce same herein. Instead, the undersigned will discuss this evidence as it pertains to the ALJ's consideration of same during her analysis of the Plaintiff's social interactions restrictions for the RFC, and the final step in the sequential evaluation process.

health treatment and supported by the objective findings in the record, though the ALJ "changed the terms slightly to use vocationally relevant terms." (Tr. at 96)

The ALJ next determined that an opinion provided by Dr. Regina McKinney was not persuasive, noting that it was written almost ten years prior to the ALJ's written decision. (Tr. at 96, 726-732)[4] The ALJ also found unpersuasive the August 2023 mental residual functional capacity assessment provided by Mariann Rogers, LSW, Behavioral Health Consultant, noting that Ms. Rogers determined the Plaintiff had marked limitations in her ability to relate to coworkers, interact with supervisors, and relate predictably in social situations, and an extreme limitation in dealing with the public. (Tr. at 96, 2619-2624) The ALJ found the opinion far too extreme in comparison to the medical evidence, which included Ms. Rogers's own findings. (Tr. at 97) However, the ALJ found the opinion of Dr. Richard Sexton[5] persuasive, as it was supported by the medical evidence, and consistent with same; significantly, Dr. Sexton determined that the Plaintiff had "no limitation in her capacity to conform to social expectations in a work setting." (Tr. at 97, 895-903)

The Plaintiff's Function Reports and Testimony:

The ALJ noted that in her function reports, the Plaintiff reported having difficulty with her memory, task completion, concentration, understanding and following instructions, getting along with others, handling stress or changes in routine well. (Tr. at 92, 659-669) The Plaintiff testified that she lives with her mother and eight-year-old daughter and that she cooks, takes care of her

---

[4] The ALJ observed that Dr. McKinney determined the Plaintiff, when she was seventeen years old, "would have minimal issues interacting and relating with others[.]" (Tr. at 96, 726-732)

[5] Dr. Sexton provided a psychological evaluation relating to the Plaintiff's claim for mental disability benefits in November 2019.

daughter, does laundry and likes to take her daughter fishing when the weather is good. (Tr. at 92) She testified that her depression got worse in January 2019, and she began seeing a psychiatrist; while she tried many different medications, she currently is on the right one with the right dose and her symptoms improved about two months after she began seeing a psychiatrist. (Id.) The Plaintiff testified that she still gets panic attacks, but they are not as bad as they used to be, but she is unsure what triggers them. (Id.) She testified that she may leave the house three times in a month for things other than doctor's appointments, such as going to the grocery store and to attend her daughter's school programs, but is afraid someone is out to hurt her. (Tr. at 92, 327) The Plaintiff also testified to getting agitated easily. (Tr. at 92) The Plaintiff also testified that she continues to have trouble being around other people – that she feels like someone is watching her and planning to hurt her. (Tr. at 326)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As mentioned above, the Plaintiff takes issue with the ALJ's finding the State agency psychological consultants' opinions persuasive, but did not adopt their additional limitation that the Plaintiff be restricted to superficial interactions with others in the RFC, and did not explain why this extra limitation was not adopted.

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. §§ 404.1546(c), 416.946(c); see also Id. §§ 404.1520c(a), 416.920c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings); see also, Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-231 (4th Cir. 2011); *Thaxton v. Colvin*, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017) (Eifert, M.J.), *report and recommendation adopted by*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017) (Johnston, J.); Jackson v. Comm'r, Social Sec., 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014) ("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); Gilmore v. Kijakazi,

11

2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022) ("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's testimony or the opinion evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. §§ 405.1545(a)(3), 416.945(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5. Instead, an ALJ must consider all relevant evidence in the record and craft an RFC that is supported by substantial evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

There is no dispute between the parties as to the ALJ's finding that the Plaintiff had moderate limitations in all four areas of mental functioning.[6] (Tr. at 90-91) Specifically, regarding the Plaintiff's abilities in interacting with others, the ALJ noted that the Plaintiff claimed in her function report that she does not spend a significant amount of time with others, and has difficulty getting along with family, friends, neighbors, and authority figures. (Tr. at 90, 659-669) Notwithstanding the Plaintiff's claims, the ALJ also noted that the Plaintiff can go to public places like the grocery store, and she had never been fired from a job because of difficulties getting along with others. (Id.) Additionally, during the examination with Dr. Sexton, it was observed that the Plaintiff's behavior was normal; and while the Plaintiff admitted to having a limited peer network, she was able to establish a workable relationship with the examiner, was cooperative, and exhibited no eccentric behavior. (Tr. at 90, 903) The ALJ further acknowledged Dr. Sexton's finding that the Plaintiff had no limitation in her capacity to conform to social expectations. (Id.) In addition,

---

[6] 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(c) provides that a "moderate limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."

the ALJ found that elsewhere in the record, the Plaintiff's behavior was normal. (Tr. at 90, 1196-1208, 1397-1412, 2208-2239)[7]

As an additional matter, this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Elaine M. v. Kijakazi*, No. 3:23-cv-00328, 2023 WL 6368980, at *8 (S.D. W. Va. Sept. 7, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6368228 (S.D. W. Va. Sept. 28, 2023) ("[T]his District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment") (citing *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D. W. Va. May 21, 2021) (citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (noting even a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect his ability to work" and thus "does not translate into a limitation in his [RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D. W. Va. Nov. 9, 2021).

From the medical and other evidence of record[8], the opinion evidence, as well as the

---

[7] The ALJ referenced progress notes concerning the Plaintiff's mental impairments from Chesapeake Behavioral Health from December 2021, April 2022 through July 2022, and April 2023 through May 2023.

[8] Of further interest here is that the ALJ observed from the record that in February 2022, the Plaintiff was noted to be looking for work, and "[t]he fact that she was looking for work during an implied period of disability undermines the consistency of her claim." (Tr. at 95, 1216-1233) Moreover, the ALJ noted that while the Plaintiff claimed to not like crowds or to be in public and that she avoided other people, however, the Plaintiff indicated in September 2023 that she was planning a trip to a Red's game with her friends. (Tr. at 95, 2728-2743)

Plaintiff's own statements in support of her claims of disabling limitations, the ALJ found that the Plaintiff, notwithstanding her complaints of social anxiety, that the Plaintiff has support from her family and friends and was able to get along with her treatment providers, and therefore limited the Plaintiff to occasional interactions with others with no tandem tasks. (Tr. at 95)

      The undersigned finds this case is similar to this Court's decision in *Dwayne C.*, *supra*, to the extent that the ALJ's explanation for the mental aspect of the RFC is deficient: for starters, the ALJ provided no explanation for having "changed the terms slightly to use vocationally relevant terms", and the undersigned is at a loss as to what that entails. Additionally, the ALJ provided no explanation for how restricting the Plaintiff to "no tandem tasks" works in relation to supervisors and the public. At bottom, there is simply no clear reason as to why the "superficial" interaction was not adopted into the RFC assessment, particularly when the ALJ found the State agency opinions "persuasive" – the undersigned agrees with the Plaintiff that this finding distinguishes this case from those cited by the Commissioner (ECF No. 9 at 2, fn1).[9] The ALJ in *this* case does not explain why she limited the Plaintiff to just occasional contact with others, while omitting the superficial restriction. As this Court explained in *Dwayne C.*, there is a notable difference between the quantity and quality of one's interactions with others, and the ALJ here did not provide the logical bridge from the evidence she found persuasive to her ultimate conclusions. Thus, because this Court must "guess about how the ALJ arrived" at this conclusion, meaningful judicial review is foreclosed to it. See <u>Mascio v. Colvin</u>, 780 F.3d 632, 637 (4th Cir. 2015); see also, <u>Patterson v.

---

[9] The Commissioner cited <u>Owens v. Kijakazi</u>, 2023 WL 2344224 (4th Cir. 2023) and <u>Turner v. Comm'r of Soc. Sec.</u>, 2024 WL 2764722 (4th Cir. 2024), where the ALJs therein only found the State agency opinions "somewhat persuasive" or "partially persuasive", respectively, and thereby did not have to accept the opined limitations. (ECF No. 8 at 5-6)

Comm'r of Soc. Sec., 846 F.3d 656, 662 (4th Cir. 2017) ("Administrative determinations are required to be made in accordance with certain procedures which facilitate judicial review . . . We cannot fill in the blanks for the ALJ in the first instance.").

In sum, the undersigned **FINDS** that the ALJ's mental RFC assessment is unsupported by substantial evidence, as it fails to adequately explain why the Plaintiff does not need the additional limitation to "superficial" contact with others. Accordingly, the undersigned **FINDS** the final decision of the Commissioner denying benefits is not supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 7), **DENY** the Commissioner's request to affirm the decision below (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Proposed Findings and Recommendation.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 30, 2025.



Omar J. Aboulhosn
United States Magistrate Judge